ROBERT G. FERRY and MARGARET H. FERRY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ferry v. Commissioner
Docket No. 15842-82.
United States Tax Court
T.C. Memo 1984-229; 1984 Tax Ct. Memo LEXIS 440; 47 T.C.M. (CCH) 1726; T.C.M. (RIA) 84229; April 30, 1984. David R. Clark and William P. Shannahan, for the petitioners. Marion K. Mortensen, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency in and an addition to petitioners' Federal income tax as follows: Sec. 6653(b) [1]
Year
Deficiency
Addition to Tax
1978
$7,857
$3,929
After concessions, the only issue is whether petitioners are liable for the addition to tax for fraud under section 6653(b). FINDINGS OF FACT Some of the facts are stipulated and found accordingly. Petitioners, Robert G. Ferry and Margaret H. Ferry, resided in Lake San Marcos, Calif., when the petition was filed herein.
From *441 1943 through 1964 Mr. Ferry was employed as a pilot by the United States Air Force. After leaving the Air Force, Mr. Ferry worked for Hughes Helicopters as a test pilot until his retirement in October 1982. Mrs. Ferry was never employed. In 1978 Frank Forrester (herein Forrester) contacted petitioners about a tax shelter investment (herein referred to as the International Dynamics investment) which he was promoting. Forrester informed petitioners that if they contracted to obtain consulting services from International Dynamics, Inc., their payments would be immediately deductible as business expenses in that year and, in the following years, International Dynamics, Inc., would repay approximately 90 percent of those payments to them as tax-free gifts. After their meeting with Forrester, petitioners contacted their certified public accountant. After their accountant advised them that the International Dynamics investment appeared to be a legitimate tax shelter, petitioners executed a contract to receive consulting services from "International Dynamics, Inc., Trustee Consultant." Pursuant to the terms of the contract, petitioners paid the total sum of $32,000 to International *442 Dynamics, Inc. in December 1978, for which they received a limited amount of investment advice. Then, consistent with their agreement, in January 1979 Forrester paid petitioners $29,400 as "gifts." On March 17, 1981, petitioners were notified by an agent of the Internal Revenue Service (herein the agent) that their 1978 return was being audited.At that time the agent asked petitioners to verify several deductions and questioned them about the International Dynamics investment. Petitioners provided the agent with a copy of the contract for consulting services and a copy of the cancelled checks Mr. Ferry paid to International Dynamics, Inc.Mr. Ferry fully cooperated with the agent during the audit and explained the details of the International Dynamics investment to him. At no time did petitioners attempt to mislead or deceive respondent's agent. Beginning May 30, 1981, petitioners were represented by their accountant during the remainder of the audit and thereafter were not in contact with the agent. In August 1981 a second agent began working on the audit of petitioners' 1978 return. In a letter dated September 22, 1981, petitioners' accountant advised this second agent that *443 in 1978 petitioners did not receive any gifts from International Dynamics, Inc. or any related entity.On September 24, 1981, the agent requested information about certain deposits of $8,000 and $15,500 which were deposited in petitioners' checking account on January 3, 1979, and January 10, 1979, respectively. At that point, their accountant informed the agent that petitioners had received those payments as gifts in connection with the International Dynamics investment. On their 1978 return petitioners deducted the $32,000 paid to International Dynamics, Inc. as investment expenses. In his notice of deficiency, respondent determined that petitioners were not entitled to this deduction. In addition, respondent determined that petitioners' underpayment of tax for 1978 was due to fraud. Petitioners concede that they were not entitled to this deduction, but deny that any part of their underpayment of tax was due to fraud.
OPINION The only issue is whether petitioners are liable for the addition to tax for fraud. Section 6653(b) provides for a 50 percent addition to tax if any part of the underpayment of a tax required to be shown on a return is due to fraud. For purposes of *444 section 6653(b), fraud is an intentional wrongdoing with the specific intent to evade a tax believed to be owed. , affd. ; , cert. denied . The existence of fraud is a question of fact to be determined from the entire record. . The burden of proof is on respondent to prove fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). Because direct proof of fraudulent intent is seldom possible, respondent may show the requisite intent from the conduct of the taxpayer and the surrounding circumstances. However, fraud is never imputed or presumed and courts should not sustain findings of fraud upon circumstances which at most create only suspicion. . In the instant case, respondent asserts that the following factors establish that petitioners' 1978 return was fraudulent: (1) *445 petitioners knew that the International Dynamics investment was a tax-evasion scheme; (2) petitioners knew they were not entitled to a $32,000 deduction on their 1978 return because approximately 90 percent of the money was almost immediately repaid to them; and (3) petitioners attempted to mislead respondent's agents during the audit. For the following reasons, we disagree. Although the International Dynamics investment was not a legitimate tax shelter, we do not agree that petitioners knew it was a tax-evasion scheme when they entered into it. Rather, based on the record before us we think petitioners did not understand the nature of Forrester's tax shelter proposal. At trial, Mr. Ferry, who we found to be a credible witness, testified that petitioners immediately went to their accountant for advice after they were approached by Forrester. After they explained the complete details of the tax shelter to their accountant, he concluded that the deductions were legitimate. Since respondent has failed to convince us otherwise, we find that petitioners justifiably relied on the advice of their accountant in taking the deduction at issue. See ; *446 . Thus, we conclude that respondent has failed to prove that petitioners knew that they were not entitled to their $32,000 deduction for the International Dynamics investment. Moreover, we also find that petitioners cooperated completely with respondent's agent during the audit.Mr. Ferry gave the agent all of his records from the International Dynamics investment and explained to him the details of the investment. Petitioners never altered or destroyed and records nor did they mislead or deceive the agent. In addition, their accountant cooperated with respondent's agents and gave them all the information they requested. Thus, respondent has failed to show that petitioners ever intended to mislead the agents. In summary, although the International Dynamics investment was extremely questionable, respondent has failed to prove and evidence that petitioners knew, it was a scheme to evade taxes. We recognize that in 1978 tax shelters were not as prevalent or publicized as they are today and therefore taxpayers were more susceptible to the promoters of abusive shelters. At trial, respondent was unable to rebut *447 Mr. Ferry's testimony that petitioners were simply naive as to the validity of the International Dynamics investment and that they only entered into it after receiving advice from their accountant. [2] Since respondent has presented no evidence of fraud other than the questionable nature of Forrester's tax shelter, we have no choice but to conclude that respondent has not proved that petitioners knew the International Dynamics investment was a scheme to evade taxes. Thus, we conclude that respondent has not established by clear and convincing evidence that any part of petitioner's underpayment of taxes for 1978 was due to fraud. Accordingly, we find that petitioners are not liable for the addition to tax for fraud under section 6653(b). To reflect concessions and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. Petitioners' accountant died prior to the trial of this case.↩